David. S. Casey, Jr., SBN 060768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
Jeremy Robinson, SBN 188325
*jrobinson@cglaw.com*
P. Camille Guerra, SBN 326546
*camille@cglaw.com*
Catherine M. McBain, SBN 303911
*kmcbain@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

Jean S. Martin
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
*jmartin@ForThePeople.com*

*Attorneys for Plaintiff*
*and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RODRIGUEZ, on behalf of himself and a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1        Plaintiff Carlos Rodriguez, individually, and on behalf of all others

2  similarly situated, upon personal knowledge of the facts pertaining to him and on

3  information and belief as to all other matters, by and through the undersigned

4  counsel, hereby brings this Class Action Complaint against Defendant Bank of

5  America, N.A. ("Defendant" or "Bank of America"), and alleges as follows:

6  **NATURE OF THE CASE**

7        1.    In the midst of the COVID-19 pandemic, millions of Californians

8  were forced to survive on unemployment benefits provided by California's

9  Employment Development Department (EDD) through an exclusive contract with

10 Bank of America. However, Bank of America provided Californians receiving

11 benefits a debit card with security features so dated they were easily hacked by

12 even the most unsophisticated thieves. Indeed, Bank of America forced Plaintiff

13 and the Class[1] to use debit cards with "magnetic stripes," an obsolete technology

14 that was phased out of normal debit cards many years ago for these well-known

15 security reasons. Bank of America also failed properly monitor Plaintiff's and the

16 Class's EDD accounts for suspicious activity, seemingly ignoring the widespread

17 fraud as it happened. Bank of America's lack of concern for the EDD customer

18 demographic allowed criminals to syphon millions from those already struggling

19 to put food on their tables. Bank of America then exacerbated the harm when it

20 froze hundreds of thousands EDD accounts as a "too little, too late" measure to

21 combat the fraudsters. In doing so, Bank of America also inhibited valid benefit

22 recipients' access to the funds they needed to survive.

23       2.    To make matters even worse, Bank of America has not responded

24 appropriately to the EDD fraud. Unlike regular Bank of America customers,

25 account holders with EDD funds must interact with Bank of America

26 representatives through a separate department. The EDD victims have reported

27 spending hours on the phone waiting to speak with a Bank of America

28

[1] The class is defined in Paragraph 37, below.

CLASS ACTION COMPLAINT

1  representative, only to have the line disconnected. This disparate customer service

2  provides a disincentive for EDD account holders impacted by the fraud to make

3  valid claims. This treatment is unfair, at best.

4      3.    The responsibility Bank of America took on when it contracted with

5  the State of California to assist vulnerable and unemployed residents cannot be

6  overstated. The EDD benefit recipients impacted by Bank of America's gross

7  security failures and failure to address the criminal activity and provide proper

8  debit card safeguards has left these people hopeless, helpless, and penniless.

9  **JURISDICTION AND VENUE**

10      4.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331

11  because Plaintiff has a claim under the federal Electronic Funds Transfer Act, 15

12  U.S.C. § 1693, et seq.

13      5.    This Court also has subject matter jurisdiction over this case pursuant

14  to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one

15  member of the proposed class is a citizen of a state different from Defendant's

16  home state, the number of proposed class members exceeds 100, and the aggregate

17  amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18      6.    Venue is proper in this district pursuant to 28 U.SC. § 1391 because a

19  substantial part of the events and/or omissions giving rise to Plaintiff's and the

20  Class members' claims occurred within this District.

21  **PARTIES**

22      7.    Plaintiff Carlos Rodriguez is a citizen and resident of the State of

23  California. Rodriguez's job as a real estate agent slowed to almost a complete stop

24  during the COVID-19 pandemic. Rodriguez applied for and received EDD

25  unemployment benefits under the CARES Act. Rodriguez received a Bank of

26  America EDD Visa debit card to access his benefits. His Bank of America EDD

27  Visa debit card has a magnetic strip and no EMV chip. Rodriguez was the victim

28  of unauthorized transactions that depleted a total of $1,130 from his EDD debit

card account.

8.     Defendant Bank of America, N.A. is a national bank with its headquarters and principal place of business in Charlotte, North Carolina. Defendant is incorporated in the State of Delaware. Defendant conducts significant business in the State of California including administering unemployment benefits through its exclusive contract with the State of California's Employment Development Department.

## FACTUAL ALLEGATIONS

### A. Defendant Manages Prepaid Unemployment Benefits Debit Cards for California's Employment Development Department.

9.     The EDD provides a wide variety of services to Californians and is one of the largest state departments. The EDD administers the Unemployment Insurance and State Disability Insurance programs; audits and collects payroll taxes and maintains employment records for millions of California workers; connects job seekers with employers; administers federal funded workforce development programs; and gathers, analyzes, and published labor market information.

10.     In 2010, Defendant Bank of America won a significant contract with the EDD to implement the EDD Debit Card Program. Through that program, the EDD issues benefit payments for Disability Insurance, Paid Family Leave, and Unemployment Insurance claims through a Bank of America EDD Visa debit card. With that card, benefit recipients can purchase items and services wherever Visa is accepted, withdraw cash at ATMs, banks, and stores with cash back options, and transfer funds to financial institutions.

11.     Bank of America provides a "Zero Liability Policy" in connection with the EDD Visa debit card, in which it assures account holders that they "may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the

CLASS ACTION COMPLAINT

loss or theft of your Card, Card number of PIN or its unauthorized use," subject to certain conditions.[2]

12.     Through its exclusive contract with the State of California, Bank of America was tasked with delivering unemployment benefits through prepaid debit cards during the COVID-19 pandemic. As explained below, thousands of those accounts were depleted by criminals and frozen by Bank of America, depriving Plaintiff and the Class of badly needed unemployment benefits.

**B. The EDD Fraud was Foreseeable**

13.     The scale of unemployment fraud in the State of California has been massive. As reported by the Los Angeles Times, the original estimate of money stolen, approximately $4 billion in payments of fraudulent claims, might turn out to be more than twice that figure.[3]

14.     Blake Hall, founder and chief executive of the company ID.me, was hired by the EDD to investigate fraud. Hall reported that at least 10% of unemployment claims may have been fraudulent prior to when controls were implemented in October 2020. The 10% fraud rate means that a total of $9.8 billion could have been made to fraudulent claimants between March and September 2020.[4]

15.     Some of the examples of EDD fraud are startling. According to Calmatters.org, fraudulent claims have led to a 1-year old in Fresno receiving $167 each week; fraudsters have received funds by impersonating Senator Diane Feinstein; and $1 billion has gone to fraudulent claims made by California state inmates.[5] Showcasing the abuse and fraud plaguing unemployment benefits,

---

[2] https://prepaid.bankofamerica.com/eddcard/Program/Terms

[3] https://www.latimes.com/california/story/2021-01-15/unemployment-benefit-fraud-california-billions-edd

[4] *Id.*

[5] https://calmatters.org/economy/2020/12/who-will-pay-for-all-of-californias-unemployment-fraud/?; and https://calmatters.org/newsletters/whatmatters/2020/11/california-edd-fraud-claims-inmates/

CLASS ACTION COMPLAINT

1    alleged fraudsters have even bragged on YouTube of siphoning significant sums

2    in jobless benefits.[6]

3    **C. Defendant Failed to Use Modern and More Secure Debit Card**

4    **Technology**

5    16.    Despite the rampant fraud plaguing unemployment benefits

6    throughout the United States, Bank of America continued to issue EDD debit

7    cards with magnetic stripes – a relic of 1950's technology - and not the safer EMV

8    chip technology, with the knowledge that chip-free cards are ideal targets for

9    fraudsters.

10    17.    Credit card companies announced that retailers were required to use

11    EMV chip reading machines by October 1, 2015. EMV payment cards contain a

12    microchip that is used to improve payment security and prevent counterfeit card

13    fraud. Consumers insert their cards into the front of a card reader with the metallic

14    square chip facing up instead of swiping cards.

15    18.    Cards with magnetic stripes, on the other hand, contain unchanging

16    data that can easily be replicated over and over again, unlike the chip cards that

17    create a unique transaction code for each transaction. If an attacker steals the chip

18    data from a specific point of sale, card duplication is unavailable because the

19    stolen transaction number created would not be usable again.[7]

20    19.    As explained by Steve Morang, a certified fraud examiner with

21    Frank, Rimerman and Company, "By having the chip, you have your information

22    that's on the card encrypted in the chip and it makes it more difficult to duplicate

23    the cards," said Morang. "Whereas the magnetic strip, that's 30-, 40-year-old

24

25    _____

      [6] https://www.nytimes.com/2020/10/18/us/nuke-bizzle-fraud-

26    youtube.html#:~:text=the%20main%20story-
      ,Rapper%20Arrested%20After%20Bragging%20About%20Unemployment%20F
27    raud%20in%20Video,coronavirus%20pandemic%2C%20the%20authorities%20s
      aid.

28    [7] https://www.theatlantic.com/business/archive/2016/03/us-determined-to-
      have-the-least-secure-credit-cards-in-the-world/473199/

technology."[8]

20.    The reason for relying on magnetic stripes and not implementing microchip technology is that the latter technology is significantly expensive. Microchip technology is so expensive, that for years banks found that paying for fraud was less expensive than paying to implement microchip technology, a cost estimated in the last decade to be approximately $1.4 billion.[9]

**D. Hundreds of Millions of Dollars Stolen from EDD Cardholders**

21.    Waves of fraud have hit EDD Bank of America debit card holders during the COVID-19 pandemic, resulting in hundreds of thousands of cases of drained funds, frozen accounts, or both.

22.    As reported by CBS-owned KPIX 5, an EDD Bank of America debit card holder noticed a strange transaction on her account from another bank that showed only zeroes. Similar transactions happened the following days, and then a total of $1,003 was withdrawn by thieves[10].

23.    Others were shocked to learn that they had reached their daily withdrawal limit after thieves had taken out thousands of dollars for days in a row.

24.    On December 7, 2020, Bank of America asked the state of California to freeze 345,000 debit cards, worth potentially $2 billion.[11]

**E. Defendant Failed EDD Benefit Recipients**

25.    Bank of America promises "zero liability" to EDD cardholders, as well as customer service "available 24 hours [a] day, 7 days a week" to assist

---

[8] https://sanfrancisco.cbslocal.com/2020/10/29/fraudulent-charges-appearing-on-bank-of-america-edd-debit-cards-350000-unemployed-californians/

[9] https://www.theatlantic.com/business/archive/2016/03/us-determined-to-have-the-least-secure-credit-cards-in-the-world/473199/

[10] https://sanfrancisco.cbslocal.com/2020/10/29/fraudulent-charges-appearing-on-bank-of-america-edd-debit-cards-350000-unemployed-californians/

[11] https://www.wsj.com/articles/wave-of-attempted-fraud-hits-state-unemployment-claims-programs-11608633000.

CLASS ACTION COMPLAINT

with, among other inquiries, resolving questions about account statements and investigating transactions.[12]

26.    In its EDD Debit Card – Cardholder Frequently Asked Questions, Bank of America represents the following regarding its "Zero Liability" policy:

> 21. Am I responsible for transactions that I did not make?
>
> The Bank of America "Zero Liability" Policy protects you against fraudulent transactions if your card is lost or stolen (subject to certain conditions). If you lose your card or someone uses your EDD Debit Card without your permission, it is important that you contact Bank of America EDD Debit Card Customer Service at 1.866.692.9374 as soon as you can to report the card lost or stolen, report any unauthorized transactions, and begin the error resolution or dispute process. The California Employment Development Department Debit Card Deposit Agreement you receive with your card will provide specific instructions on the dispute process and the time frames that apply to the Bank of America "Zero Liability" Policy. In addition, Visa Purchase Security and Visa Zero Liability programs also protect you from unauthorized card use.[13]

27.    As explained further in Bank of America's EDD debit card agreement, Bank of America represents that EDD card users "may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to" certain terms and conditions.[14]

28.    Bank of America further represents that, "If you tell us within two business days after you learn of the loss or theft, you can lose no more than $50 for an unauthorized transaction or a series of related unauthorized transfers should someone use your Card or PIN. … If you do NOT tell us within two business days

---

[12] https://prepaid.bankofamerica.com/eddcard/program/faq#q20
[13] *Id.*
[14] https://prepaid.bankofamerica.com/eddcard/Program/Terms

after you learn of the loss or theft of your Card or PIN and we can prove we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500."[15]

29.    Additionally, Bank of America includes in its Frequently Asked Questions a question as to what the "Bank of America EDD Debit Card Customer Service hours" are.

30.    Bank of America responds, "For your convenience automated account information and dedicated customer service representatives are available 24 [a] hours day, 7 days a week by calling 1.866.692.9374 or you can go online at www.bankofamerica.com/eddcard."

31.    Bank of America represents that its "EDD Debit Card Customer Service representative" can help with, among other things, resolving questions about account statements, investigating transactions, and processing lost/stolen/damaged card reports.[16]

32.    Bank of America did not meet its contractual obligations with its EDD benefit recipients.

**F. Plaintiff's Bank of America EDD Debit Card Experience**

33.    Plaintiff Carlos Rodriguez, a resident of San Diego, California, received unemployment benefits from the EDD due to the COVID-19 pandemic. Every two weeks Rodriguez received $900 on a Bank of America EDD debit card.

34.    Sometime after December 18, 2020 and on the day Rodriguez anticipated his EDD funds deposited into his Bank of America EDD account, Rodriguez checked his account to confirm receipt of the $900 deposit but discovered the funds were not there. Concerned of the whereabouts of his EDD funds, Rodriguez looked further into the account transaction histories for his Bank of America and EDD accounts and noticed a $230 withdrawal on December 10,

---

[15] *Id.*

[16] https://prepaid.bankofamerica.com/eddcard/program/faq#q20

2020, and a $900 withdrawal on December 17, 2020. Neither withdrawal was made by Rodriguez or with his permission. In fact, these fraudulent transactions were made in Los Angeles, while Plaintiff was in San Diego. Plaintiff Rodriguez further noticed that someone had used what was likely a false duplicate of his card to check the account balance on November 30, 2020 and numerous times throughout December 2020.

35.    Alarmed by these transactions and missing funds, Rodriguez immediately contacted Bank of America. Bank of America stated that it had never received funds from the EDD. Rodriguez then called the EDD, which confirmed that it had deposited the $900 to his Bank of America EDD debit card account. Rodriguez then called Bank of America a second time, and at that point was informed that tens of thousands of individuals with Bank of America EDD debit card accounts had their funds depleted.

36.    As of the date of the filing of this complaint, Bank of America has not returned any of the stolen funds to Rodriguez's account.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff Rodriguez brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed class and subclass (collectively, the "Class") pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), defined as follows:

1.    The Class: All individuals who, at any time from January 1, 2020 through the present, were lawfully in possession of Bank of America debit cards for the purpose of accessing EDD benefits.

2.    The Fraud/Frozen Subclass: All individuals who, at any time from January 1, 2020 through the present, were lawfully in possession of Bank of America debit cards for the purpose of

CLASS ACTION COMPLAINT

accessing EDD benefits and experienced fraud and/or had their EDD Bank of America accounts frozen.

38.    Excluded from the proposed Class is Defendant Bank of America, including any entity in which Defendant has a controlling interest, is a subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant.

39.    Plaintiff reserves the right to under Rule 23 to amend or modify the class description with greater specificity or further division into subclasses based on information learned after the filing of this Complaint.

40.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.    **Numerosity:** Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the California Employment Development Department.

42.    **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all other members of the Class, has sustained damages from the same misconduct engaged in by Defendant. Furthermore, the factual bases of Defendant's misconduct are common to all Class members and represent a common thread resulting in injury to the Class as a whole.

43.    **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Class. These common legal and factual issues include the following:

CLASS ACTION COMPLAINT

a. Whether Defendant engaged in the wrongful conduct alleged herein;

b. Whether Defendant violated state and federal laws in its management and distribution of EDD benefits through its Bank of America debit cards;

c. Whether Defendant engaged in unlawful, unfair and/or fraudulent conduct in violation of California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, et seq.;

d. Whether Defendant breached its duty of care owed to persons who were lawfully issued Bank of America debit cards for the purpose of accessing EDD benefits;

e. Whether Defendant's conduct breached any express or implied contract with EDD or any state agency or with recipients of EDD debit cards;

f. Whether damages, restitution, equitable, injunctive, compulsory or other relief is warranted.

44.    **Adequacy of Representation**: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Therefore, the Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

45.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or

contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
### Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

46.     Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

47.     California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, et seq., prohibits "unlawful, unfair, or fraudulent business act or practices."

48.     As detailed in the allegations above, Defendant's "unfair" acts and business practices include, among other things: (a) failing to securely store Plaintiff's and Class members' EDD cardholder and account information; (b) issuing debit cards with outdated, unsecure magnetic stripe technology to provide Plaintiff and Class members access to EDD unemployment benefits; (c) failing to provide provisional credit to Plaintiff and Class members and/or freezing their accounts; (d) failing to investigate and resolve Plaintiff's and Class members' claims of unauthorized transactions despite Defendant's "Zero Liability" policy for unauthorized transactions and promises of 24 hours a day / 7 days a week customer service availability.

49.     Defendant's conduct is "unfair" because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers including Plaintiff and Class members. Defendant's conduct also constitutes "unfair" business practices in violation of the UCL, because, among other things, the gravity of the harm to Plaintiff and the Class members outweighs the utility of Defendant's conduct. Defendant's conduct is also unfair because it treated EDD benefit recipients different from its standard banking customers. Defendant also

failed to provide proper call support to handle the EDD fraud claims.

50.    Defendant's conduct is also "unlawful" in that it violated the California Consumer Privacy Act; Regulation E of the federal Electronic Funds Transfer Act, which limits liability for unauthorized transactions and provides for provisional credit when claims of fraud are left unresolved for longer than ten business days, and California statutory and common law.

51.    As a result of Defendant's violations of the UCL, Plaintiff and Class members are entitled to injunctive relief (a) prohibiting Defendant from continuing its unfair, unlawful, and deceptive business practices; (b) requiring Bank of America to take reasonable measures to prevent future unauthorized use of EDD debit cards and accounts; and (c) requiring Defendant to promptly and adequately resolve EDD cardholders' claims regarding unauthorized or fraudulent use of their EDD debit cards or accounts.

52.    As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, including the funds lost to fraud that have not been reimbursed, fees paid to Bank of America, and lost access to funds resulting from Defendant freezing EDD cardholders' accounts.

53.    Pursuant to Cal. Bus. & Prof. Code § 17200, et seq., Plaintiff and Class members seek any such orders or judgments as may be necessary to restore Plaintiff and Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the UCL.

**COUNT II**
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code § 1798.150**

54.    Plaintiff incorporates by reference all allegation in this Complaint as alleged herein.

55.    Defendant collects consumers' personal information as defined in

Cal. Civ. Code § 1798.140. As a result, Defendant has a duty to implement and maintain reasonable security procedures and practices to protect this personal information.

56.    Defendant violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff's and Class members' personal information from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and Class members.

57.    As a direct and proximate result of Defendant's violations of the CCPA, Plaintiff's and Class members' personal information was subjected to unauthorized access and exfiltration, theft, or disclosure.

58.    As a direct and proximate result of Defendant's violations of the CCPA, Plaintiff and Class members were injured and lost money or property, including but not limited the loss of Plaintiff and Class members' EDD unemployment benefits, legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses as described above.

59.    Defendant knew or should have known that its EDD debit card security practices were inadequate to safeguard Plaintiff and Class members' personal information and that the risk of a data security breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices, such as utilizing EMV chip technology, appropriate to the nature of the information to protect the personal information of Plaintiff and Class members.

60.    Defendant is a corporation organized for the profit or financial benefit of its owners, with annual gross revenues exceeding $25 million, and

collects personal information as defined in Cal. Civ. Code § 1798.140.

61.    Plaintiff and Class members seek relief under § 1798.150(a), including: recovery of actual damages; injunctive or declaratory relief; any other relief the court deems proper; and attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5).

62.    Plaintiff and Class members also seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Plaintiff and Class members' personal information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold Plaintiff and Class members' personal information. These individuals have an interest in ensuring that their personal information is reasonably protected.

63.    On January 20, 2021, Plaintiff's Counsel sent a notice letter to Defendant's registered service agent via certified mail. Assuming Defendant cannot cure its violation of the CCPA within 30 days, and Plaintiff believes any such cure is not possible under these facts and circumstances, Plaintiff intends to promptly amend this complaint to seek actual damages and statutory damages of no less than $100 and up to $750 per customer record on behalf of the Class as authorized by the CCPA.

## COUNT III
### Violation of The Electronic Funds Transfer Act
### 15 U.S.C. § 1693, et seq.; 12 C.F.R. § 1005.1, et seq.

64.    Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

65.    The Electronic Fund Transfer Act of 1978 ("EFTA"), 15 U.S.C 1693 et seq., is intended to protect individual consumers engaging in electronic fund transfers.

66.    Regulation E provides a basic framework that establishes the rights, liabilities, and responsibilities of participants in electronic fund transfer systems such as automated teller machine transfers, telephone bill-payment services, point-

of-sale terminal transfers in stores, and preauthorized transfers from or to a consumer's account, such as direct deposit and social security payments.

67.    Plaintiff and the Class members provided notice to Defendant within 60 days after Defendant sent a period statement reflecting an unauthorized transaction, constituting an "error" under Regulation E, which triggered the error resolution requirements of 12 C.F.R. § 1005.11.

68.    Defendant violated the error resolution requirements of 12 C.F.R. § 1005.11 by failing to provide provisional credit to Plaintiff and Class members' accounts in which it could not resolve error investigations within 10 business days.

69.    In such violations of 12 C.F.R. § 1005.11, Defendant failed to conduct good faith investigations into unauthorized transactions Plaintiff and the Class members have reported by failing to provide Plaintiff and the Class members reasonable access to Defendant's customer service and failing to prove otherwise meaningful assistance when they have been unable to reach Defendant's customer service. Accordingly, Plaintiff and the Class members are entitled to treble damages under 15 U.S.C. 1693f(e).

70.    Where Defendant violated Regulation E by failing to provide provisional credit to Plaintiff's and Class members' accounts, Defendant has not had a reasonable basis for believing that the account was not in error. To the contrary, Defendant has made it unreasonably difficult for EDD debit cardholders to report suspected fraudulent or otherwise unauthorized transactions, and (b) has not, and currently is not, used adequate resources to investigate and resolve the fraudulent activity impacting Plaintiff and Class members' accounts. Such behavior demonstrates that Defendant has been unable or unwilling to form a reasonable basis for believing an account was not in error. Accordingly, Plaintiff and the Class members are entitled to treble damages under 15 U.S.C. § 1693f(e).

71.    Defendant knowingly and willfully concluded that Plaintiff's and

Class members' accounts were not in error when that conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation. Plaintiff and the Class members are therefore entitled to treble damages under 15 U.S.C. § 1693f(e).

72.   Defendant further violated Regulation E by failing to limit Plaintiff's and Class members' liability as required by 12 C.F.R. § 1005.6(b).

73.   Plaintiff Rodriguez provided notice to Defendant within two business days after learning of the fraudulent transactions that occurred in his EDD Bank of America account. Under such circumstances, Plaintiff's and similarly-situated Class members' liability is capped at $50 under 12 C.F.R. § 1005.6(b)(1), Despite this $50 cap on liability, Defendant has subjected Plaintiff and similarly-situated Class members' to liability exceeding $50.

74.   Pursuant to 12 C.F.R. § 1005.6(b)(2), $500 is the maximum liability when an accountholder does not provide notice to the financial institution within two business days after learning of a suspected unauthorized transaction.

75.   As to any Class member who did not provide Defendant with actual notice within two business days of discovering a suspected unauthorized transaction, Defendant was given notice constructively, as provided by 12 C.F.R. § 1005.6(b)(5)(iii), due to the rampant and widely publicized fraudulent activity impacting EDD debit card accounts.

76.   Regardless of whether Defendant timely received actual or written notice, neither Plaintiff nor any Class member is liable for over $500 of damages per 12 C.F.R. § 1005.6.

77.   As a direct and proximate result of Defendant's violation of Regulation E, Plaintiff and the Class members have lost money.

78.   Plaintiff, individually, and on behalf of the Class, seeks: (a) actual damages; (b) restitution of all EDD benefits funds improperly debited by Defendant; (c) statutory damages; (d) treble damages pursuant to 15 U.S.C. §

1693f(e); (e) incidental and consequential damages suffered due to their inability to pay bills or otherwise use their unemployment funds; and (f) an injunction barring Defendant from illegally debiting EDD benefits.

## COUNT IV
### Negligence

79.     Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

80.     Defendant owed a duty to Plaintiff and the Class members to exercise reasonable care to, among other things: (a) ensure the security of Plaintiff and the Class members' EDD unemployment benefits; (b) utilize newer and safer EMV chip technology in the EDD debit cards issued to Plaintiff and the Class members; (c) ensure that adequate resources were available to respond to EDD debit card holders' claims of fraudulent activity and/or frozen accounts; (d) provide adequate notice to Plaintiff and the Class members of fraudulent or otherwise unauthorized transactions in their EDD debit card accounts; (e) promptly and adequately investigate and resolve claims of unauthorized or fraudulent transactions, including un-freezing accounts after determining that the account is no longer subject to unauthorized access or use; and (f) provide provisional credit to Plaintiff and the Class members where Defendant is unable to resolve claims of fraud in a timely manner.

81.     Defendant breached these duties to Plaintiff and the Class members by: (a) failing to adequately secure Plaintiff and the Class members' EDD unemployment benefits; (b) failing to utilize EMV chips in EDD debit cards issued to Plaintiff and the Class members, and instead rely on decades-old and unsecure magnetic stripe technology; (c) failing to provide adequate resources to respond to EDD debit card holders' claims of fraudulent activity and/or frozen accounts; (d) failing to provide adequate notice to Plaintiff and the Class members of fraudulent or otherwise unauthorized transactions in their EDD debit card

accounts; (e) failing to promptly and adequately investigate and resolve claims of unauthorized or fraudulent transactions, as well as failing to un-freeze accounts after determining that the account is no longer subject to unauthorized access or use; and (f) failing to provide provisional credit to Plaintiff and the Class members where Defendant is unable to resolve claims of fraud in a timely manner.

82.    Defendant's duties arose from its relationship to Plaintiff and the Class members and from industry custom, including Regulation E, which requires Defendant to provide provisional credit to Plaintiff and the Class members when it cannot timely and adequately respond to claims of fraudulent or otherwise unauthorized transactions.

83.    The harm suffered by Plaintiff and the Class members was reasonably foreseeable to Defendant because of well-publicized fraud plaguing federal and state governments' efforts to administer unemployment benefits during the COVID-19 pandemic, the well-known security risks associated with magnetic stripe debit card technology, and because Defendant knew or should have known that its customer services resources were inadequate to handle a sharp rise in inquiries and complaints from EDD benefits recipients.

84.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class members have been harmed through being unable to access their EDD benefits.

### COUNT V
### Breach of Express Contract

85.    Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

86.    At all relevant times, Defendant expressly represented in its "California Employment Development Department Debit Card Account Agreement" the following, in Sections 9 and 11, with emphasis supplied:

Bank of America's "Zero Liability" Policy for Unauthorized

Transactions. Federal law (described in the section below entitled "Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft, or Unauthorized Transactions ") may limit your liability for unauthorized transactions on your Account, but you may still be liable in some circumstances. **Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions**…

…

WHEN YOU WILL HEAR FROM US

**We will determine whether an error occurred within 10 business days after we hear from you—and will correct any error promptly**. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation…

87.    Plaintiff and Class members have upheld their obligations under the agreement. Defendant, on the other hand, breached its obligations by failing to limit EDD cardholders' liability; failing to reimburse Plaintiff and Class members for unauthorized transactions or provide provisional credit within ten business days; and failing to timely investigate and resolve claims of unauthorized or fraudulent use.

88.    As a direct and proximate result of Defendant's breach of this agreement, Plaintiff and Class members did not receive the benefit of their bargain with Defendant and were injured as described in detail herein.

### <u>COUNT VI</u>
### Breach of Implied Contract

89.    Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

90.    Defendant entered into an implied contract with Plaintiff and Class members by providing banking services for their EDD benefits, and Plaintiff and

1  Class members, by using such banking services, provided Defendant with the

2  ability to monetize these accounts through fees associated with EDD debit cards.

3      91.    Implied in these exchanges was a promise by Defendant to take

4  reasonable steps to ensure that the EDD debit card accounts were secure against

5  unauthorized transactions and that any claim of fraudulent or otherwise

6  unauthorized transactions was adequately investigated and resolved.

7      92.    Plaintiff and the Class members reasonably expected that Defendant

8  had implemented adequate security measures to protect their EDD debit card

9  accounts from unauthorized or fraudulent use as well as adequately investigate

10  and resolve claims of such misuse, and would allocate a portion of the money paid

11  by Plaintiff and the Class members through debit card fees under the implied

12  contracts to fund those measures.

13      93.    Neither Plaintiff nor the Class members would have used Defendant's

14  EDD debit card services without the implied contract between them and

15  Defendant. Defendant needed to provide adequate adequately safeguard Plaintiff's

16  and Class members' EDD debit card accounts, as well as adequately investigate

17  and resolve claims of unauthorized use or fraud.

18      94.    Plaintiff and Class members performed their obligations under the

19  implied contracts agreements with Defendant. Conversely, Defendant breached its

20  obligations under the implied contracts by (i) failing to provide adequate security

21  measures to protect Plaintiff and Class members' EDD debit card accounts from

22  unauthorized or fraudulent use; as well as (ii) failing to adequately investigate and

23  resolve claims of such misuse.

24      95.    As a direct and proximate result of Defendant's breaches of these

25  implied contracts, Plaintiff and the Class members did not get the benefit of their

26  bargain implied contract with Defendant and were injured as described in detail

27  above.

28

## Count VII
### Breach of Implied Covenant of Good Faith and Fair Dealing

96.     Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

97.     In every contract and implied contract, there is a covenant of good faith and fair dealing to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.

98.     In the covenant of good faith and fair dealing implied in its EDD account agreements with Plaintiff and the Class members, Defendant was at all relevant times obligated to: (a) ensure the security of Plaintiff and the Class members' EDD unemployment benefits; (b) ensure that adequate resources were available to respond to EDD debit card holders' claims of fraudulent activity and/or frozen accounts; (c) provide adequate notice to Plaintiff and the Class members of fraudulent or otherwise unauthorized transactions in their EDD debit card accounts; (d) promptly and adequately investigate and resolve claims of unauthorized or fraudulent transactions, including un-freezing accounts after determining that the account is no longer subject to unauthorized access or use; and (e) provide provisional credit to Plaintiff and the Class members in cases where Defendant is unable to resolve claims of fraud in a timely manner.

99.     Defendant breached the implied covenant of good faith and fair dealing by: (a) failing to adequately secure Plaintiff and Class members' EDD unemployment benefits; (b) failing to utilize EMV chips in EDD debit cards issued to Plaintiff and Class members, and instead rely on decades-old and unsecure magnetic stripe technology; (c) failing to provide adequate resources to respond to EDD debit card holders' claims of fraudulent activity and/or frozen accounts; (d) failing to provide adequate notice to Plaintiff and the Class members of fraudulent or otherwise unauthorized transactions in their EDD debit card accounts; (e) failing to promptly and adequately investigate and resolve claims of unauthorized or fraudulent transactions, as well as failing to un-freeze accounts after determining that the account is no longer subject to unauthorized access or

use; and (f) failing to provide provisional credit to Plaintiff and the Class members where Defendant is unable to resolve claims of fraud in a timely manner.

100.    As a direct and proximate result of Bank of America's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have suffered actual losses and damages.

101.    Plaintiff and the Class members are entitled to damages, including compensatory damages and restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

### Count VIII
### Unjust Enrichment

102.    Plaintiff incorporates by reference all allegations in this Complaint as alleged herein.

103.    This Count is pled in the alternative to the legal claims set forth above.

104.    Plaintiff and members of the Class conferred a monetary benefit on Defendant. Specifically, by using Defendant's EDD banking services, Defendant was able to charge debit card-related fees, and profit off Defendant's exclusive contract with California.

105.    In exchange, Plaintiff and the Class members should have received from Defendant the goods and services, such as the security of payment information, that were the subject of the transaction and should have been entitled to have Defendant protect their EDD accounts with adequate security.

106.    Defendant appreciated, accepted, and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Defendant's conduct toward Plaintiff and the Class members as described herein; Plaintiff and the Class members conferred a benefit on Defendant and Defendant accepted or retained that benefit. Defendant profited from the Plaintiff's and the Class members' use of its EDD accounts.

107.    Defendant failed to secure Plaintiff's and the Class members' EDD

CLASS ACTION COMPLAINT

accounts and, therefore, did not provide full compensation for the benefit Plaintiff and the Class members provided.

108.   If Plaintiff and the Class members knew that Defendant would not secure their EDD accounts with adequate security, they would have utilized alternatives, such as receiving EDD benefits via paper checks.

109.   Plaintiff and the Class members have no adequate remedy at law.

110.   Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and the Class members conferred on it.

111.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class members because Defendant failed to implement adequate security to safeguard Plaintiff and Class members' EDD benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an order:

a.  Certifying the proposed Class as requested herein;

b.  Appointing Plaintiff as Class Representatives and undersigned counsel as Class Counsel;

c.  Finding that Defendant engaged in the unlawful conduct as alleged herein;

d.  Enjoining Defendant's conduct and requiring Defendant to take the following corrective actions, including:

    i.   Provide refunds to all Class members equal to the value of unauthorized transactions from their EDD accounts;

    ii.  Issue EDD debit cards with EMV chip technology to all current and future EDD cardholders;

    iii. Establish adequate customer service to allow EDD cardholders to report fraudulent transactions and request reimbursement;

|   |   |   |
|---|---|---|
| 1 | iv. | Timely respond to EDD cardholders' claims of unauthorized |
| 2 |   | transactions and requests for reimbursement; and |
| 3 | v. | Allow Class members to file claims pertaining to unauthorized |
| 4 |   | transactions that otherwise would be deemed expired. |

e. Awarding Plaintiff and Class members statutory and actual damages;

f. Awarding Plaintiff and Class members pre-judgment and post-judgment interest on all amounts awarded;

g. Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

h. Granting such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Class, hereby demands a trial by jury as to all matters so triable.

Dated: January 20, 2021          /s/ Gayle M. Blatt
                                 GAYLE M. BLATT

                                 **CASEY GERRY SCHENK
                                 FRANCAVILLA BLATT &
                                 PENFIELD, LLP**

                                 *Attorneys for Plaintiff and the
                                 Class*

CLASS ACTION COMPLAINT